IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-00445-F

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CARL BURKHOLDER; and A.G. ENTERPRISES OF SARASOTA, L.L.C., formerly A.G. ENTERPRISES, L.L.C.,<br>      Plaintiffs,<br><br>v.<br><br>R.A. CONNELLY; R.A. CONNELLY, INC.; THE HANOVER INSURANCE COMPANY; and THE HANOVER INSURANCE GROUP, INC.,<br>      Defendants. | ORDER |

      This matter is before the court for ruling on three dispositive motions filed by some or all of the defendants. R.A. "Bob" Connelly and R.A. Connelly, Inc. (collectively, "Connelly"), have filed two motions to dismiss this action and later were joined by The Hanover Insurance Company[1] in a motion for summary judgment [DE-43]. All three of the dispositive motions are based on the affirmative defense that the one-year statute of limitations bars the plaintiffs' Miller Act claim. See 40 U.S.C. § 3133(b)(4). The use plaintiffs, Carl Burkholder and A.G. Enterprises of Sarasota, L.L.C. (collectively, "A.G.E."), argue that their complaint was timely filed. A.G.E. also alleges a supplemental claim against Connelly for breach of contract which claim Connelly also seeks to have dismissed.

---

[1] The Hanover Insurance Group, Inc., has been dismissed as a defendant. See Notice of Voluntary Dismissal [DE-16].

Neither side of this controversy has proffered a cogent statement of the facts underlying this lawsuit. The court's attempts to do so have come to naught. The record that has been assembled to date has been cobbled together over many months with small pebbles and sticks that do not form a cognizable structure. The foundation, such as it is, is too flimsy to support a framework, and simply defies any coherent description. The court attempts, however, to relate in a general way what it has been able to discern.

This case is in federal court because A.G.E. purports to state a Miller Act claim against Connelly and Hanover Insurance to recover for sums allegedly owed under Hanover's payment bond. Connelly entered a prime contract with the United States Army to construct a facility in Harnett County, North Carolina, attached to Ft. Bragg Army Base. Connelly, in turn, contracted with A.G.E. to perform certain aspects of the construction project. A.G.E., as first-tier subcontractor, then entered into an agreement with Michael Eppes whereby Eppes was to complete a phase of the job. Eppes, therefore, was a second-tier subcontractor. All the subcontracts among the various parties are handwritten, and the prime contract is not part of the record.

Connelly, through its principal, Bob Connelly, terminated A.G.E.'s subcontract on August 23, 2010, and ordered Burkholder and A.G.E. off the job site, and it appears that they complied. Eppes, however, whose subcontract was with A.G.E., had begun his phase of the work on May 12, 2010, and he continued to perform until he had completed his job on August 29, 2010. Therefore, although A.G.E. was kicked off the job and its subcontract with Connelly terminated on August 23, 2010, Eppes kept working under his own subcontract. The amended complaint and its

2

supporting exhibits concerning events after August 23, 2010, are insufficient to permit any reliable description or analysis.

It is not contested, however, that prime contractor, Connelly, terminated the first-tier subcontractor, A.G.E.'s subcontract on August 23, 2010, and ordered A.G.E. off the job. Nor is it contested that Eppes continued to work through that week and weekend until he completed his second-tier subcontract on Sunday, August 29, 2010.

A.G.E. instituted this Miller Act and breach of contract action by filing a complaint [DE-1] on August 23, 2011. Eppes is not a party to this lawsuit. Connelly moved to dismiss [DE-18] on grounds that the one-year Miller Act statute of limitations rendered the lawsuit untimely. A.G.E. then filed an amended complaint [DE-24], which it amended [DE-26] to include a missing page, purporting to include allegations that would support a determination that its action had been timely filed. The defendants filed a second motion to dismiss [DE-27], and A.G.E. responded. Before the court had reached the motions to dismiss, the defendants timely filed a motion for summary judgment [DE-42], and A.G.E. responded [DE-44] in opposition thereto.

All these motions and responses were briefed and some accompanied by attachments, including affidavits and copies of handwritten contracts, invoices, logs, etc. Although the action was initiated just over a year ago, A.G.E.'s suggestion of a factual basis for subject matter jurisdiction did not materialize until *after* it had filed an amended amended complaint and after Connelly had filed its second motion to dismiss. At bottom, A.G.E. seeks "$117,940.00, plus interest, attorney's fees and other costs as allowed by law" pursuant to the project bond.

Connelly contends that the lawsuit must be dismissed without reaching the merits because A.G.E. filed it one day after expiration of the Miller Act limitations deadline and, therefore, this

3

court lacks federal subject matter jurisdiction. Connelly contends the limitation period expired on August 22, 2011, because A.G.E. last supplied material or performed labor under its first-tier subcontract on August 23, 2010, the day Connelly terminated that subcontract and ordered A.G.E. off the jobsite. In opposition, A.G.E. advances the argument that the lawsuit is timely because its complaint and amended complaint, as amended, sufficiently have pleaded that *Eppes'* continuing work even after Connelly tossed A.G.E. off the job "counts" for purposes of triggering A.G.E.'s one-year limitations period under the Miller Act. Accordingly, the court is asked to decide whether work performed by a second-tier[2] subcontractor (Eppes) after the prime contractor (Connelly) unilaterally terminated the first-tier subcontractor's (A.G.E.'s) subcontract on August 23, 2010, is attributable as labor performed or materials provided by the first-tier subcontractor (A.G.E.) for purposes of triggering the one-year limitations period for A.G.E.'s Miller Act claim.

**The Miller Act**

In order to conform with the specific statutory requirements of the Miller Act, "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). The Fourth Circuit Court of Appeals has ruled that Rule 6(a), FED. R. CIV. P., does not apply to the Miller Act. See Masonry, Inc. v. R.T. Woodfield, Inc., 708 F.2d 249,

---

[2] Connelly attempts to characterize Eppes as a "third-tier subcontractor" whose performance may not be used to trigger the commencement of the one-year Miller Act limitations period, citing U.S. for Use of Barber-Colman Co. v. U.S. Fid. & Guar. Co., 19 F.3d 1431 (4th Cir. 1994). This court's reading of Barber-Colman does not comport with Connelly's. To the extent the distinction may be deemed relevant, Eppes was a second-tier subcontractor, not a third-tier subcontractor; Eppes contracted with A.G.E., which was the first-tier subcontractor under Connelly's prime contract with the Army Corps of Engineers. Eppes could have sued on the project's bond, but he did not.

4

250 (4th Cir. 1983) (because Rule 6(a) is not applicable to Miller Act's limitation period, a subcontractor's suit filed on July 24, 1980, seeking payment for work completed on July 23, 1979, was time barred).[3]

The Fourth Circuit Court of Appeals long ago explained who is protected under the payment bond according the Miller Act:

> Under the [Miller] Act, [former 40 U.S.C. §§ 270a-270d], the bond protects only sub-contractors and their sub-subcontractors, laborers and materialmen. In MacEvoy v. United States, for Use and Benefit of Calvin Tompkins Co., 322 U.S. 102, 107, 108 . . . (1944) the Court so declared and defined 'subcontractor' as follows:
>
> > 'The proviso of § 2(a) (40 U.S.C. 270b(a)), . . . , makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor.

Miller Equip. Co. v. Colonial Steel & Iron Co., 383 F.2d 669, 673 (4th Cir. 1967) (footnote omitted). The Miller Act defines "person" to include "all persons whether individuals, associations, copartnerships, or corporations," and former 40 U.S.C. § 270(a)(2) provides that the payment bond required thereunder shall protect "all persons supplying labor and material in the prosecution of the work." The Act's coverage is limited, however, to (1) persons in privity of contract with the prime contractor, and (2) persons in privity of contract with a subcontractor of the prime contractor. *See* former § 270(b)(2).

---

[3] Rule 6(a) entitled, "Computing Time," provides that the day of the event is not counted but the last day of the period is counted. Because the Fourth Circuit has determined that Rule 6(a) does not apply for purposes of Miller Act limitations calculations, the period begins on the day of the event and the last day is not counted.

A "subcontractor" is limited to one "who performs for, or takes from, the prime contractor a specific part of the labor or material requirements of the original contract," but excludes ordinary laborers and materialmen. See Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 109 (1944). A person in privity of contract with a "subcontractor" is protected and may recover under the bond.

**Analysis**

These definitions, as applied here result in the following designations: A.G.E. is a first-tier subcontractor in privity with prime contractor, Connelly. A.G.E., therefore, is a "person" covered by the Miller Act bond. And as a "person" in privity of contract with the first-tier subcontractor, Michael Eppes, a second-tier subcontractor, also is covered. That is, Eppes presumably could have sued on the payment bond for his work had he not been paid, but he apparently did not.

I. Labor

The "person bringing this action" against the prime contractor and the bond is A.G.E. and its principal, Burkholder. The facts alleged in the pleadings and represented by exhibits thereto establish that A.G.E. and Burkholder last performed labor on the jobsite on August 23, 2010. The "person" with whom A.G.E. subcontracted was Eppes, who was not an employee of A.G.E. and who also is not a party to this action. Thus, the "day on which the last of the labor was performed . . . *by the person bringing the action*" – A.G.E. – was August 23, 2010.

The court concludes that Eppes' performing labor subsequent to August 23, 2010, does not extend the trigger date for A.G.E.'s one-year Miller Act limitation period. The parties have not directed the court's attention to a case in which the performance by a second-tier subcontractor

6

who is not a party to a Miller Act lawsuit can extend the one-year limitation period for such a suit by the first-tier subcontractor who is a party. The Barber-Colman case does not provide direct support for either party here; that case explicitly declined to address "the issue of whether a first-tier sub-contractor can use the date of a second-tier subcontractor's last work." Barber-Colman, 19 F3d at *4, n.2. A.G.E.'s Miller Act claim is untimely unless A.G.E. "supplied materials" pursuant to its subcontract with Connelly after that date.

II. Materials

Neither the complaint nor the amended complaint, as amended, contains allegations that suggest A.G.E. supplied materials after August 23, 2010. Only in *response* to Connelly's second motion to dismiss did A.G.E. first allege that it "supplied additional materials to the Project through Eppes and other suppliers" during the week following August 23, 2010. See Response to Motion to Dismiss Amended Complaint [DE-32], unnumbered p. 3, citing the Second Affidavit of Carl Burkholder at ¶ 5, attached as Exhibit A.

Nothing in either Eppes' or Burkholder's Affidavits appended to the amended complaint mentions A.G.E.'s supplying materials to the job site on or after August 23, 2010. Both are concerned with Eppes' provision of *labor* between August 23 and August 29, 2010. Not until Burkholder's Second Affidavit, appended to A.G.E.'s Response [DE-32] to Connelly's motion to dismiss the amended complaint [DE-27], does provision of materials after August 23 enter the picture. Discussing "the first punch list for the CESS Project," in paragraph 5 of this second affidavit, Burkholder avers:

> 5. On Exhibit 1, "110 Mech; Install damper OAU-1" refers to a damper for the outside air unit. The duct material required to complete this punch item had to be specifically fabricated and sized to connect the damper to the OAU unit. This duct material was *ordered by AG Enterprises and paid by AG Enterprises*. This duct

7

work was required under my contracts with Bob Connelly. The material was *delivered to the CESS job site later in the week, after August 23, 2010*, and remains unpaid.

Burkholder Second Affidavit [DE-32], Exh. A, at ¶ 5 (emphasis added).

Connelly's Reply [DE-33], supported by the Affidavit of Robert "Bob" Connelly, asserted for the first time that after Connelly had terminated A.G.E.'s subcontract and ordered Burkholder and A.G.E. off the job, Connelly himself entered into a verbal agreement with Michael Eppes by which Connelly would pay Eppes what he was owed under his subcontract with A.G.E. if Eppes would complete the duct work he had started under that subcontract. See Reply [DE-33], p. 2 & Exh. 1, Connelly Affidavit.

Moreover, Bob Connelly averred that "The *duct work* referenced in paragraph 5 of the Second Affidavit of Carl Burkholder was *not supplied to the job site by AG Enterprises*. The duct work was fabricated by Bass Air Conditioning Company, Inc. and *picked up and paid for by RAC*." Id. at ¶ 12 (emphasis added). Connelly's statement that it paid for and picked up the fabricated duct work directly contradicts Burkholder's sworn statement in ¶ 5 of his second affidavit that A.G.E. ordered and paid for that material.

Although the Local Rules of this court do not permit a sur-reply in a civil case, A.G.E. nevertheless filed what it calls a "Response Memorandum" to the second motion to dismiss, supported by a Second Affidavit of "impartial third party Michael Eppes." Response Memorandum [DE-34] (hereinafter "Sur-Reply"), unnumbered p. 2. Eppes' second affidavit states, in pertinent part that,

> 3. Everything I did on the CESS Project was under my written contract with Carl Burkholder, even after he left the job site on August 23, 2010.

> 4. Specifically, the tie in duct work for the outside air unit (OAU) . . . was ordered by Carl Burkholder the week before he left the site on his contract with Bass Air Conditioning, and *delivered to the site by Bass Air Conditioning after . . . Carl had left the job site.*
>
> * * * * *
>
> 5. My only agreement with Bob Connelly was that he would pay me what Carl Burkholder owed me. I had no contract with Bob Connelly.
>
> 6. The *duct work* for the damper referred to in paragraph 5 of the Second Affidavit of Carol Burkholder, was *ordered by Carl Burkholder before August 23* and delivered to the site after he had left the site on August 24 or 25, 2010.

Sur-Reply [DE-34], Exh. 1, ¶¶ 3-4, 6-7 (emphasis added).

Had the court been able to reach it, the defendants' second motion to dismiss would have been allowed as soon as it became ripe. That did not occur, and the defendants were compelled by deadlines set in the scheduling order [DE-31] to file their motion for summary judgment [DE-42]. The asserted ground for entitlement to summary judgment was lack of a genuine issue of material fact that the action is untimely under the one-year Miller Act statute of limitations.

The allegations contained in A.G.E.'s amended complaint, as amended [DE-24 & -26], together with the exhibits appended thereto, Exh. A-J, construed on their face in the non-moving party's favor and treated as true, see Schweikert v. Bank of America, N.A., 521 F.3d 285, 288 (4th Cir. 2008), are insufficient to state a timely Miller Act Claim. Neither version of the complaint alleges a factual basis on which this action could be deemed timely filed. A.G.E.'s contention that it supplied materials after August 23, 2010, did not appear in this lawsuit until A.G.E. filed its "Second Memorandum of Law in Opposition to Defendants' Second Motion to Dismiss" [DE-32], supported by Burkholder's "Second Affidavit."

9

A.G.E.'s amended complaint fails, therefore, "to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), because it does not contain facts that support subject matter jurisdiction under the Miller Act. Although the amended complaint declares that, "[t]he last of the labor was performed and material supplied by Plaintiffs within the meaning of 40 U.S.C. § 3133(b)(4) on August 29, 2010," that conclusory statement is belied by a correct application of Miller Act limitation provision in light of the other allegations and documents appended as exhibits to the amended complaint. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

**Conclusion**

For the court to find that the amended complaint was timely, it would have to deem Eppes to have been an employee or agent of A.G.E., which conclusion neither the amended complaint nor the accompanying materials support. This court lacks subject matter jurisdiction because the complaint and amended complaint allege facts which, taken as true, demonstrate that statute of limitations expired on August 22, 2011, one day before this action was filed. The court declines to exercise supplemental jurisdiction over the state law breach of contract claim. See 28 U.S.C. § 1367 (c)(3).

Accordingly, it is ORDERED that Connelly's Motion to Dismiss [DE-18] and Motion to Dismiss the amended complaint [DE-27] are ALLOWED, and the instant action is DISMISSED in its entirety. Defendants' Motion for Summary Judgment [DE-42] is DISMISSED as moot.[4]

---

[4] Moreover, the court lacks subject matter jurisdiction to entertain the motion for summary judgment.

SO ORDERED.

This, the 25th day of September, 2012.

                                         JAMES C. FOX
                                         Senior United States District Judge

11